Should I state my appearance? Yes, please. Should I state my appearance? Yes, of course you should. Okay. Gregory Weston representing Plaintiff Appellant Aloudi. Okay, go ahead. Oh, so I have two sets of arguments. One is the errors that this district court made, and a lot of those are specific to this case. But I hope the court will take this opportunity to provide guidance to other district courts with a published opinion that interprets the case National Council Against Health Fraud v. King Biopharmaceuticals, King Bio as it's called a lot. That decision district courts have explicitly disagreed with in many different situations, including in this case. So why is this something that we should be publishing about? This is a state law question that's up to the state courts. We usually don't publish on questions of state law. I'm not sure why this is our job to fix. Well, it is, I think, the court's job to fix in the sense of how King Bio should be applied in the district court stage in diversity cases. And there's certainly a lot of diversity cases in California consumer fraud law, and especially within this context of nutrition supplements. And I think the fact that district courts are explicitly saying multiple times that they disagree with one another, including the district court below here, saying that I disagree with these. As to what exactly? As to whether or not King Bio applies when you have a specific claim of clinical proof? Is that what? Yes, exactly. This district court said I disagree with McCrary v. Alations, but that was far from the only decision. I think, in fact, the majority of courts, though not this one, side with the plaintiffs where you have the situation where there's a claim of clinical proof and the plaintiff says there's actually no clinical proof. This district court said you simply can't have claims like that. That's an improper lack of substantiation claim. So I think that there is a unique aspect of that, that the California courts themselves can't apply because it involves Federal pleading standards. And to just give one example of how they're going to be a little bit different. Wait. Why couldn't the State courts solve this? Did you bring this case in Federal court or State court? Initially in Federal court. So if you want a clarification about California law, couldn't you file it in State court? Can you explain why California courts couldn't answer their own question about California law? Well, I'll give a good example, which is that California's version of the pleading fraud with particularity does not apply to the UCL. In this court, though, the Federal courts, if a claim is grounded in fraud, even though it's not a fraud claim, it does have to be applied with particularity. So the exact question of how, what a plaintiff needs to allege in a case alleging supplement is fraudulently labeled is not going to be exactly answered when it comes to the UCL, because one, in State court there's no particularity requirement. In Federal court there is. But I thought this question that we're talking about here is whether clinically proven falls within California's lack of substantiation issue, and that seems like a State law question, right? What's the Federal component of that? Isn't it purely a State law question you're trying to get us to answer here? As phrased there, it would be an issue of State law. And I think the other argument in that case is there's just so many different decisions that are coming in different ways, and uniformity is an important aspect of, I think, when the Court decides whether or not. Sotomayor, should we certify this question to the California Supreme Court? I would not be opposed to one, but I think that it's, it is, we have enough evidence on our side that it's not, should not be necessary. Wait a minute. You say there's a predecessor legal question. Pardon? You say that there's a predecessor legal question, i.e., would all the evidence in the world matter, or is this a lack of substantiation claim? Part of it. I understand you have another part in which you are specifically alleging the falsity of the statement. But as to that part, the part about the clinically proven, it doesn't matter what you've alleged, it doesn't count. The more extreme version of their argument that the Defendant makes, and the district court, with a minority of them, did accept, is if it says clinically proven, you're saying that's false, you just, no matter how much evidence you have. And I'm asking you whether we should certify that question to the California Supreme Court if it really matters. You're saying it's all over the place, it really matters, it happens a lot. I think the court has the power to do it, and it is the type that could be referred. However, I would hope that the court not do it simply because I don't think it's a close issue. I think it's unfortunate that there's a few district courts who are doing this, but they are a minority, and it is something that this Court can resolve. And So what about California law tells us that that is not a lack of substantiation claim? Well, King Bio itself says that. In the sense that King Bio was, did not have that type of allegation. It doesn't say it. It says we're not deciding it. Yeah. Clinical proof was not one of the claims in King Bio itself. And they specifically said they're not deciding it. So how does that case answer this question? How does it answer? Oh, well, other parts of the, it does answer it. One of the things King Bio says is that the falsity of an advertising claim may be established by testing, scientific literature, or anecdotal evidence. And we provide all three of those things, and I think there's simply no support in that decision for the position of the district court and a few other district courts that you can't bring, and I think we have brought evidence that involves scientific literature and anecdotal evidence of falsity. King Bio says that. Well, my understanding of what a substantiation claim is in California as brought by a public entity is that a public entity can go to a company and say, you said X, substantiate it, i.e., the burden is completely on the defendant or the potential defendant. Right? And you're not, as I understand it, you're saying here that when you say clinically proven is false, you're going to prove it's false. Yes. We intend, and I think we have allegations that meet Twombly, that we, there's a reasonable possibility we will be able to prove that it is, in fact, a false statement that it's clinically proven and will. But doesn't that depend on whether this really was referring to the Vinson study? I mean, if they can show, no, we're not talking about the Vinson study, then doesn't it become a lack of substantiation claim, because you've got to show there is no study and that's lack of substantiation? We're prepared to show, we're prepared to prove the negative in the sense there is no clinical studies. And how are you going to do that? How is that not a lack of substantiation? It's not a lack of substantiation because what, I actually think sometimes that framework of using that phrase lack of substantiation is not actually grounded in King Bio, which was actually about burden shifting. And if I could go back to King Bio for a moment, that was a case that was brought to trial, it was not brought by an individual plaintiff, but it was brought by a special purpose corporation created to sue them. And they had a trial and the parties conceded at appeal that the question of who wins or loses the case depends on who has the burden of persuasion at trial. And let me read just one line from King Bio. On appeal, plaintiff acknowledges the trial court correctly imposed the burden of proof under current California law, but contends the law should be changed to impose the burden of proof on a defendant in a false advertising action. That was, King Bio was, most of the decision is talking about under what circumstances it's appropriate to shift the burden. All right. Can we get into the weeds a little more? Yes. The question, one thing that sort of baffled me about where we are here is that there's been all this debate back and forth about whether you have sufficiently established that this Vincent report, which was a discredited report, was in fact the report that was being relied upon. Then after this is basically over or at the time of the last part of the proceedings, you then come forward with this, was it a document from their website or some internal document in which you do this chart about how it all matches up, but it's all very persuasive, but it's not in your complaint. And you were told by the district judge on the last set of amendments, put everything in your complaint. I don't want to hear about anything that's not in the complaint. Put it all in the complaint. So where are we at that point? I mean, why did this happen? Why isn't it in the complaint? And what do we do with it when he was absolutely lucid about the fact that he wanted everything in the complaint? Well, it was in the complaint. And the other thing I want to mention is that we allege it to be the case that it is and the district court struck it. You allege it to be the case that what is? That the Vinson study was the basis of the record. I know you do, and you said you did, but you didn't demonstrate it. Then you have a pretty good demonstration where you match up every claim they make about their study and everything that's in the Vinson report, and you have a little chart, and it's pretty persuasive, but it's not in the complaint. Well, the information from the internal memo did indeed come in our opposition to the motion to dismiss. All right. Now, where did you get that from? But that's not the complaint. So why is it not in the complaint? Well, the other evidence that it's the Vinson study from the website, that wasn't the complaint. So it's true that discovery was ongoing, and we put some of the evidence in our opposition to the motion to dismiss. But you can't do that, because you're on a motion to dismiss. Well, even if the Court didn't want to consider this internal document because it was produced on the opposition to the motion to dismiss, I would have hoped, first of all, it would also disregard a lot of the other stuff. This was supposed to be a motion to dismiss. I think our very first complaint was sufficient in making the allegation that it is the Vinson study and should have been accepted as true. But the district court just kept saying, make this like a summary judgment motion. We had discovery and then we had a motion to dismiss. So is your problem you didn't have this piece of paper at the time you filed the last complaint? You only got it afterwards? Is that what you're saying? I don't know. I can't recall the exact time that it was produced. But I think, again, even without the particular ---- And why is discovery ongoing while you're litigating the motions? I mean, this is another example of what I said earlier, i.e., one result of Iqbal's been to completely mush up the summary judgment and the dismissal proceedings, and this seems to be true procedurally as well. You're doing both simultaneously? That ---- I ---- the mushing up is exactly what happened here. And I don't think it's a problem often, but in this case it certainly was where I kept feeling like the defendants are producing and disputing things in the complaint, and I ---- it was hard for me to convey to the district court, you know, this is our allegation, it is it. We have some evidence that we can accumulate through public sources that support it, and we'll put it in the complaint. We get further evidence in discovery. But the complaint itself says a very specific allegation that puts them on notice what our claim is. Our claim is that you're using the Vinson study for support of your clinical-proof claim, and it is not clinical-proof for it, and that's what you're relying on. And that's a specific enough allegation that to comply with 9b. It doesn't need to have every single possible fact in support. It needs to create a plausible expectation that discovery will lead to support for it. Kennedy. So can I ask you just about the lack of clinical study and the differentiation between Foundation as well as falsity? Is it your point that, you know, generally speaking, lack of clinical study is a foundational question? That goes right to the foundation for the opinion that's been asserted that's relevant to the lawsuit. But your point is, I think, that lack of clinical study is a claim unto itself? Yes. Is that what you're basically suggesting? So I'm just trying to figure out a claim. You have a claim for lack of clinical study. Is that really the source of a complaint? I mean, is there some recovery from a lack of clinical study? Because lack of clinical study, theoretically, would be required to show damages as a result of the fact that there's no clinical study. It's one allegation among others. How is that an independent claim which would justify damages? Well, because it's something that could induce consumer reliance. So there's the claim that this pill that's just a bunch of herbs causes rapid weight loss, a significant reduction in body mass index is the phrase that's on there. We allege those are false. Then there's the phrase that it's clinically proven to do this. That is also false. But it's possible that there could be no clinical proof, but it be true. But we say they're both false. There's no obligation or duty on the part of the manufacturer of the product to conduct clinical studies, theoretically. So there's no violation of any right on the part of the plaintiff here. We don't allege that they were obligated to do studies. I think people just really refer to lack of clinical study as foundational. That is that it provides a foundation for the ultimate claims. Our allegation is not that they were obligated to produce studies or that they're obligated to give us studies in any way. It's only that they were required to tell the truth on their label. We allege clinically proven is a simply false claim. We intend to prove that it's false, and we have a lot of allegations that give rise to the idea that it's plausible, that it's false. Then there's the claims to efficacy itself, that it causes rapid weight loss and that it'll cause significant reduction in body mass index. We allege those are false. On the latter, your only proof or your only basis for your allegation is it didn't work for this particular person, right? It definitely didn't work for him, and we do have detail. The district court said that allegation didn't pass 9b, but we say he took it, the amount he took, when he took it, and it didn't work. I'm not sure what else 9b would require. However, we also say that the active ingredients in it, the ones they call the active ingredients, are actually not worked. They have been studied, and they show to be worse than placebo. So we do have allegations beyond the anecdotal that it doesn't work. Okay. If you want to save any time. Well, I do. Thank you. Yes, sir. Good morning, Your Honors. Chris Sullivan on behalf of the appellee. Everything you just heard is moot for two reasons. The first is any challenge to the propriety of King-Bio or the reach of King-Bio, which, by the way, was adopted by this Court in the Quan and Engel cases at the Ninth Circuit, was waived. They adopted the reasoning of Quan, Engel, and King-Bio and attempted to differentiate  the two. The second reason is that they are trying to deal with the open issue in King-Bio. The open issue, which is the exception to when you can bring what an exception, it's a different statement, or that's their claim. I mean, it doesn't help to analyze it to say it's an exception. It would help if you analyzed it. Why wouldn't it be true that saying that something is clinically proven, if it's not, is a false statement that could be separately actionable? Well, I'd have to go back to what Judge Friedland said, is it's only true if, two assumptions, Vincent is the one and only statement. No, no, no. I'm talking generally first, as a general matter. Why can't a private party bring a cause of action for false advertising by saying you said it was clinically proven and it wasn't? I think you could. And I'm going to prove it. I'm not asking you to prove that it was clinically proven. I'm going to demonstrate that it isn't clinically proven. In other words, assuming in line with Rule 8, 9, and 11, they allege that, that would fit into what I call the exception or the scientific literature testing and anecdotal evidence exception of King-Bio. That's not the case we have here. So you're agreeing that you could make, have a cause of action for a false statement as to clinical testing, they just haven't done it? That's correct. You could. So you're not, you're not claiming that King-Bio precludes such a cause of action by a private party? So long, Your Honor, as you meet Rule 8, 9, and 11. And that would have to look, your allegations would have to be something like, I've searched every medical journal in the universe and there is no statement anywhere in it that it relates to this point and so it must be false. Something like that? No, my, my interpretation of that, and I could see that as an interpretation by a plaintiff litigant, my interpretation would, that would not be sufficient under King-Bio. That you would need, as all of the, the studies that the plaintiffs, I'm sorry, the cases that the plaintiffs cite, you would need more. You would need to rise to the occasion with either presenting scientific literature that shows that these ingredients don't work. It's not proving a negative, in other words. You need to come forward with affirmative evidence. But that's not what, what was said. What was said was we have, I mean, essentially when you say this is clinically proven, you mean that we know of evidence clinically proving it. It doesn't mean you have to go out and do another study. I agree, Judge. And this is why there's two ships passing night. And there's all these great questions from these judges about why didn't you put this stuff in or why the district court in its. So that's a different stuff. I mean, we need to. With all due candor, if I could just point to the record at ER 189 to 194. This was sent to plaintiff's counsel a year before he filed. What's the this? This is, the 189 is Amir's declaration, which testifies to the list of clinical studies that substantiate this product that were sent to plaintiff's counsel a year before he filed his first complaint. So can he get around this, which is clearly a substantiation case, simply by ignoring it and being within the contours of rules 8, 9, and 11? Or is it, as the judge and the three of you asked today, finding it curious why these documents didn't make their way into the complaint, and as a district court, Judge Kagan. Which documents? These documents. The list of clinical. Those particular studies. What is that? Those studies or the documents summarizing those studies. This was a list of published studies supporting the product. All that were available to the plaintiff's counsel, and we would have sent him copies if he had asked for them. Now, the district court found that because he opened the door in the second motion dismiss, plaintiff's counsel said, I have the Amir's declaration. I have, this is the missing gun. I have this. He said this on the transcript. And the judge said, as I can't remember which justice, great. Look forward to seeing it in the second amended complaint. Not there. And the district court judge found that evasive and suspicious. Because the Vincent study is on here, and we can concede that for a limited period of time before it was discredited, the Vincent study was relied upon. But what about the 17 other studies? How is this not a substantiation case? How is this not a Rule 11 violation? Kagan. I'm sorry, but I don't get the substantiation part. But he's, I guess I understand the Rule 11 part, but you didn't make a Rule 11 motion. No. It was raised with the district court judge. That was sort of irrelevant. What do you mean it was raised? Note four of his order. That based on his evasiveness and suspiciousness of not pleading these documents, he didn't think there was a Rule 11 basis to make the connection between the literal falsity and the clinically proven. ER8, Your Honor. All right. I'm on ER8, and what am I supposed to find out? Footnote at the bottom there. Oh, I see. All right. So essentially what you're suggesting is based upon the 17 studies. 17 other studies other than Vincent. Other studies aside from Vincent, which you recognize was based upon fraudulent information. What you're basically suggesting is there's no viable claim that there were no clinical studies. As a result, the falsity issue becomes irrelevant, and that therefore, any attack on these underlying studies really are foundational in nature. That's correct. Is that what you're saying? Yes. Yes, Your Honor. That the only way to get to a case that attacks the studies, I like it the way you did it better, that the clinically false claim. That's the second time that I've gotten a compliment from the lawyers on one two-day sitting. Well, I thought all of the questions today were good, but the only way to get to the. Joking. Yes, the only way to get to the. We joke in Vermont, actually. It's just. We never joke in Utah, but the only way to get to the actual falsity allegation, which is where you judge started, which is holding me to the fire over what does King Bio mean or not mean. And I agreed that if you have absolutely no clinical evidence supporting your product and you say there is clinical evidence, that's a lie, right? That's a lie. That's actually false. Well, that's what I do understand the dispute to be about, the legal dispute. I gather that there is at least a line of thought that it's still too similar to a substantiation claim that you can't do it.  So right. And I think then it's an element of pleading and an element of proof of what exactly testing scientific evidence and anecdotal evidence means. However, let me just clarify something. Essentially, your position is that him, his allegation that you relied on the Vincent report was true at one point, but you also relied on a lot of other things. And so we really don't have to worry ourselves very much about whether he adequately relied on, he adequately alleged reliance on the Vincent report, because even if you take out the Vincent report, you still, it was still clinically proven. He had proven that everything else was a lie, too. That's exactly right. I mean, I think it was a little bit candidly more nefarious than that on the other side, but what you just said logically is correct. In other words, it goes back to where I started. For the Vincent report to be relied on to have any materiality here, you need two things. One is, it is the one and only report relied upon. And the second is, does it, under the King Bio standard, does it rise to the level of having absolutely no clinical, that it rises to the level that you don't need to get into the substance of the study that prima facie it doesn't provide clinical support? And I think we'd concede that with respect to the Vincent study at this point. So could we go back? So you seem to be conceding that this type of claim is possible. You could have a lie about whether something is clinically proven. So how would someone allege, I think we got interrupted or something. I don't know that I got your answer for how someone would allege that that kind of claim properly. Well, I think you go to the cases that the appellant cited for all under King Bio, by the way, or Kwan and Engle or the other cases have gone this way. So the case, for instance, the Rush case, the DMAA case, that one had articles, FDA warning letters about DMA. The Forcelletti case, which the appellant's called. But that's about the underlying claim, right? You're jumping to, so he says clinically proven to cause weight loss. So I think your answer to me now is, well, if you point to studies that show it really doesn't cause weight loss, that's enough. But I don't understand that, because what if you have one other study that says it does? It seems like you've got to, I don't really understand why you're saying that as your answer to how you would show clinically proven is not true. Yeah, I think clinically proven is a difficult one for appellants, but I have to agree with the judge that it's possible. In other words, if you have a scenario, let's forget about pleading and elements of proof just for a second. If you have a scenario where you put on your box clinical studies demonstrate. And then you have an internal document that says we don't have any clinical studies. Regardless of whether there are clinical studies out there in the world that support that product, if we knew when we went to market we didn't have any knowledge of those, that's literally false. That's actionable. And so someone could just allege we think there must be an internal document? I mean, I don't understand how anyone would know about the internal document. So how are they going to allege this claim? Well, remember, the elements of proof, the pleading standards for literal falsity are not the same as to get around the King-Bio exception. So they could say, like they did here, so they have internal memos. There was early discovery here. They got the list of all of the clinical studies that support the product. They also got an internal memo about the Vinson study by a Ph.D. within the company. And they got a couple of other documents. Those documents might have demonstrated, as they represented to the Court, that Vinson was the one and only study that we relied on. They might have said that. They actually said that that's what those documents said. In which case, they would have a case. What about this document that they didn't put in their complaint that does light up the Vinson study and the claims made as to what the study in question showed? Yeah, the side-by-side tables you're talking about that were in the motion to dismiss. First of all, the – what the district court says is not making the complaint  But with regard to the – Where did the district court say that? It was pretty vague. I mean, I didn't – I was not at all focused on that document because I didn't see it. It actually refers to it as the Mears Declaration. The word Mears, which is Stephanie Mears, is in that footnote. And the transcript. It's the Mears Declaration that the plaintiff is the one. I think it was more vaguely in the footnote. But go ahead. I've forgotten your question. What about this document? Oh, the other document, which is the – a review of – a overview review by a Ph.D. in chemistry of the various clinical studies out there. It was updated shortly after the Vinson study was published because it was part of the substantiation for this product when the Vinson study was first published. So it was updated. It was an article by a Ph.D. that has references to the Vinson study. Why they didn't include it in their pleadings, I don't know. I have an answer for this. And maybe that's why, that by pleading one, they would have felt obligated to plead the other. But I don't have an answer. But that's what that document is. It's a reference to multiple studies, including the Vinson study, by an internal Ph.D. in chemistry. Okay. And actually, do you want the site? Now, you didn't talk at all about the actual falsity claim, aside from the clinical studies claim. I understood there would be two things going on here. One is they said that it was false, that there was clinically proven. But they also said that this doesn't actually cause rapid weight gain, and they purported to demonstrate it. Yeah. They don't actually push that, Your Honor. And we deal with that in the briefs. And what I would say on that is they don't push it because what is literally – what does – and the Court might not like hearing this. But this is a marketing company. What does rapid mean? Rapid in connection with what? They would have you believe it means chemotherapy, which – and that's one interpretation. But, you know, is three pounds a month rapid? In other words, it's – Well, there are claims he took it and didn't lose anyway. Right. And we would ask the Court to define what anecdotal evidence means. If you go through the cases, I think it's pretty clear what it means. It's not defined by Kingbio. I think it's pretty clear what it means is expert reports using their professional experience, using their judgment, not specifically testing. But if you had 20 people who said, I took this for three months and nothing happened. Fine. Then define it. We're asking this Court to define it, because it doesn't mean what they would have it mean. And what the Eckler court says it doesn't mean. It doesn't mean just because one litigant says it that that rises to the level of the exception, what I call the exception. I know you don't like that, to Kingbio. Because if that was the case and if they're right, Your Honor, you are overturning Kingbio, because any litigant can come in and just say it didn't work for me. Kingbio has nothing to do with this point. No, it does, Your Honor, because it's whether or not a private claim by a private litigant is allowed or not. And you first go to Kingbio, the Supreme Court of California, as well as the 17500 section of the California Code. And you're always making sure that you're not falling back in to a claim that can only be brought by the government. All right. Thank you very much. Thank you, Your Honor. I'll give you a minute plus the time you had, so a minute 13. But you better get out of here fast. Thank you. Well, there was a lot of talk of declarations there. There was a declaration from one of their employees that they sent to me. I disagree with the content of it. I disagree with the stuff about the 17 studies. But we — What do you mean you disagree with it? But did you account for it in your complaint? We reviewed what they said and what our complaint alleged, and we believe is true, is that there were three things that meet the standard of scientific studies of green coffee being extract. And we looked at all three of them, and there was a fourth one that reviewed it, and then there was Vinson that was withdrawn. And we looked through all those three, and those are the ones we do. But we don't have an obligation to put in our complaint their contentions and our arguments against it. Well, but, I mean, this is the problem with the burden if you're going to demonstrate that they had no clinical proof. If they say this is our clinical proof and you don't negate the clinical proof, then what? Well, we'll certainly do so when we get beyond discovery. The thing is, this piece of paper is not — we have no obligation to allege it, basically. They can come forward with it as their defense on summary judgment. Yes. This is for summary judgment. If I could say one more sentence. There are three things in King-Bio says that you can use to prove your claims, testing, scientific literature and anecdotal evidence, and we put that into our complaint in detail. Okay. Thank you both very much. We've had a lot of labeling today. And we will submit the case of Aludi v. Intramedic Research Group and are in recess for the moment. Thank you.
judges: Berzon, Friedland, Sessions